❏ Original      ❏

CLERK'S OFFICE
A TRUE COPY
Aug 06, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information associated with the cellular telephone )
assigned call number (414) 242-0995, th at is )
stored at premises controlled by Verizon Wireless. )

Case No. **21-M-451 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   8-20-21                          *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to          Hon. Stephen C. Dries                          .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of          03/04/2022          .

Date and time issued:     8-6-21. 10:55 am

_Judge's signature_

City and state:     Milwaukee, WI                          Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.     Records and information associated with the cellular device assigned call number (414) 242-0995 (referred to herein and in Attachment B as "Target Cell Phone #1"), with an unknown listed subscriber(s) that is in the custody or control of Verizon Wireless, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2.     Target Cell Phone #1.

## ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.    The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone #1 for the time period September 1, 2020, to the present:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone #1 for the time period September 1, 2020, to the present including:

a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.    Information associated with each communication to and from the Target Cell Phone #1 for a period of 30 days from the date of this warrant, including:

i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.    Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.    All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which Target Cell Phone #1 will connect at the beginning and end of each communication

c.    Information about the location of Target Cell Phone #1 for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II

data, GPS data, latitude-longitude data, and other precise location information.

i.    To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone #1 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.   This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Section 841(a)(1) involving Henry OFFICE.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.



CLERK'S OFFICE
A TRUE COPY
Aug 06, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# United States District Court
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the cellular telephone<br>assigned call number (414) 242-0995, that is stored at<br>premises controlled by Verizon Wireless. | ) ) ) ) ) ) | Case No.  **21-M-451 (SCD)** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Conspiracy to possess with intent to distribute and to distribute controlled substances. |

The application is based on these facts:
See attached Affidavit.

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of  180  days *(give exact ending date if more than 30 days:*  03/04/2022  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent Jacob A. Dettmering
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  8-6-21

*Judge's signature*

City and state:  Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jacob A. Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 242-0995** ("**Target Cell Phone #1**"), whose service provider is Verizon Wireless ("Service Provider") a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. **Target Cell Phone #1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and de-briefed confidential informants as well as cooperating defendants. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become with the methods used by drug traffickers to manufacture, smuggle, safeguard, and

2

distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 (conspiracy to possess with intent to distribute and to distribute controlled substances) have been committed, are being committed, and/ or will be committed by Henry M. OFFICE, a/k/a Reese, DOB XX/XX/1992. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. The Federal Bureau of Investigation (FBI) is investigating Henry M. OFFICE, a/k/a "Reese," for his involvement in drug trafficking throughout

Milwaukee, Wisconsin. The investigation to date has revealed that OFFICE is the leader of a drug trafficking organization (DTO) that uses multiple residences throughout Milwaukee, Wisconsin, to distribute controlled substances, including heroin and cocaine. The investigation further revealed that OFFICE supplies narcotics to these drug houses. The OFFICE DTO uses various individuals at each drug house to work at the door, serve as look-outs for law enforcement, and control the narcotics' stash. OFFICE also engages in mobile-drug trafficking.

7.     The investigation to date has included traditional law enforcement methods, including, but not limited to interviews with confidential sources and sources of information; search warrants; documentary evidence; pen register, trap and trace, and telephone toll data; controlled drug purchases; controlled meetings with targets; and physical surveillance.

### Drug House – 1537 S. 15th Street (Upper), Milwaukee, Wisconsin

8.     On September 9, 2020, MASSTF executed a state search warrant at 1537 S. 15th Street (Upper), Milwaukee, Wisconsin. A confidential Source, CS #3, was shown an unlabeled photo of Henry M. OFFICE, and CS #3 identified the individual as "Reese." CS #3 identified "Reese" as the source of supply for 1537 S. 15th Street. CS #3 conducted controlled buys of heroin and crack cocaine from the residence 1537 S. 15th Street (Upper), Milwaukee, Wisconsin, which was the basis of the state search warrant.

9.     CS #3 has been a confidential source since August, 2020. CS #3's information is consistent with case agents' knowledge of the OFFICE DTO. Furthermore, substantial portions of CS #3's information has been corroborated by

controlled drug purchases and through independent investigation, including surveillance and information from other sources. CS #3 has cooperated with law enforcement for monetary compensation. CS #3 has a criminal history which includes misdemeanor property crimes. For these reasons, case agents believe CS #3 is reliable and credible.

10.     During the execution of this warrant, law enforcement officers located digital scales, sandwich baggies, and corner cut baggies with a gray chunky substance, among other items, within the house. Also present at the residence was Jarvis T. Pirtle, who was taken into custody. Pirtle had 6.5 grams of cocaine on his person that was later discovered on the floor of the booking room that Pirtle was initially in. A review of the booking room video footage confirmed that there was nothing in the room under the bench before Pirtle entered and was placed on the bench. The video then depicted Pirtle manipulating the front of his pants and pushing something down his left leg. In a subsequent interview, Pirtle admitted that the cocaine was his and that he attempted to get rid of it at that time. In an earlier Mirandized interview, Pirtle also admitted to being the doorman for this residence and meeting people downstairs to let them in. Pirtle stated that "Peanuts" was the drug dealer for the house. "Peanut" is a known street name for Curtis Ruffin.

## Drug House – 1401-A W. Orchard Street, Milwaukee, Wisconsin

11.     In December, 2020, SOI #2 provided information to law enforcement regarding a drug house being operated at 1401-A W. Orchard Street, Milwaukee, Wisconsin.   SOI #2 told law enforcement officers that "Tank" and "Reese" opened a

new drug house within the past 30 days at 1401-A W. Orchard Street. SOI #2 described "Tank" as a black female, approximately 5'01", 150lbs, with shoulder length black hair. SOI #2 stated that "Tank" dresses as a male and dates women. SOI #2 described "Reese" as a black male, approximately 6'00" tall, 175lbs, with shoulder length black hair.

12.     SOI #2 stated that SOI #2 is romantically involved with someone that is addicted to heroin, and that SOI #2's partner bought heroin and cocaine from Tank and Reese every day. SOI #2 stated that Reese and Tank opened a new drug house after moving from the area of S. 10th Street and W. Arthur Street, in Milwaukee, because it was too "hot" and had been running for too long.

13.     SOI #2 stated that SOI #2 has dropped SOI #2's partner off at 1401 W. Orchard Street numerous times and observed SOI #2's partner enter the residence and return with heroin and cocaine in clear plastic sandwich baggies. SOI #2's partner stated upon return to SOI #2's vehicle that s/he purchased the drugs from either Tank or Reese.

14.     SOI #2 stated that sometimes SOI #2's partner is inside of the residence for an extended period of time. According to SOI #2, this is because a doorman by the nickname "Bobby" is inside and Bobby is "extremely talented" in injecting heroin into the veins of heroin users and known as the "doctor." SOI #2 relayed that the more a heroin user injects heroin into their veins the harder it becomes to hit that vein. SOI #2 said Bobby is known for this talent amongst drug users and dealers, thus making Bobby highly valuable.

15.     SOI #2 has been a confidential source of information since December,
2020. SOI #2's information is consistent with case agents' knowledge of the OFFICE
DTO. Furthermore, substantial portions of SOI #2's information has been
corroborated through independent investigation, including surveillance and
information from other sources. SOI #2's cooperation stems from SOI #2's concern
for SOI #2's partner who is addicted to heroin. SOI #2 has no open criminal cases
and is not cooperating for consideration from any prosecuting agency. SOI #2 is not
receiving monetary compensation. However, SOI #2's statements are against SOI
#2's penal interests. SOI #2 has a criminal history that includes a misdemeanor
disorderly conduct conviction. For these reasons, case agents believe CS #3 is
reliable and credible.

16.     On or about December 29, 2020, MASSTF conducted subsequent
surveillance at 1401-A W. Orchard Street in the City and County of Milwaukee,
Wisconsin, and made several observations consistent with drug dealing.
Specifically, officers observed in the span of one hour eleven individuals come and
go from 1401-A W. Orchard Street in quick succession. Officers recognized some
individuals to be self-admitted drug users. Officers observed Sandra L. White, a/k/a
"Tank," and Robert W. Maurina, a/k/a "Bobby," opening the door for the individuals
coming to the door; both are suspected employees of the OFFICE DTO. Officers
observed Odell R. Williams exit 1401-A W. Orchard Street, walk across the street to
an occupied vehicle, retrieve a black weighted plastic bag, and quickly return into
1401-A W. Orchard Street. Through previous investigations and debriefs, officers
suspect Williams to be a doorman and lookout. Officers also observed Gregory A.

Office park across the street from 1401-A W. Orchard Street, enter 1401-A W. Orchard Street, and leave approximately 5-10 minutes later. Officers know Gregory Office is a relative and suspected co-conspirator of OFFICE.

17.     On December 30, 2020, at approximately 1:14 p.m., agents observed OFFICE and an unknown male exit the front door for 1401-A W. Orchard Street and enter a gray Chevy Malibu with Missouri registration plates. Law enforcement traffic stopped this vehicle, of which OFFICE was the driver and Ashley Gandy was the passenger. Gandy was in possession of a loaded, black semi-automatic Smith and Wesson M&P 40 pistol in his waistband area, approximately $1,596 in his left pant pocket, over 30 pills that field tested positive for MDMA, a digital scale in his jacket pocket, and over 7 grams of heroin. On OFFICE's person was over $2,700 in U.S. Currency (mostly 5's, 10's and 20's) and two cellphones, a black iPhone, and blue Samsung.

18.     Simultaneously, on December 30, 2020, MASSTF executed the warrant for the residence. Multiple individuals were inside of the residence at this time. During the search, law enforcement located, among other items, a loaded Smith & Wesson SC 40 VE semi-automatic pistol, digital scales, clear plastic baggies, cocaine, used and unused needles, vials of naloxone (Narcan), and MDMA.

## Target Cell Phone #1 – Search Warrant Data

19.     On January 5, 2021, a search warrant authorized law enforcement to search the black iPhone located on OFFICE's person. The iPhone was assigned the phone number of **Target Cell Phone #1.**

20.     A review of the search warrant extraction of OFFICE's phone, **Target Cell Phone #1**, revealed that OFFICE has used **Target Cell Phone #1** to facilitate his drug trafficking. Below are examples of drug communications located on **Target Cell Phone #1**.

21.     For example, OFFICE had the following text communications with "Easie Money," using (414) 865-1112, a number believed to be used by Easie Money Wilkinson, DOB XX/XX/1986. Wilkinson is believed to be a member of the DTO.

22.     On or about July 21, 2020, OFFICE and Wilkinson had the following conversation:

- ***WILKINSON:*** *"1480 Short a hunnit cuz"*
- ***OFFICE:*** *"Damn my bad Yu rite I owe yu 95 jus hit me whenever yu ready to get it"*
- ***WILKINSON:*** *"Cuz. U aint gotta say my name or hate on me to get no action"*
- ***OFFICE:*** *"I aint never said shit about yu cuz and you awe to be a shame of yo self for even approaching me with that shit smh ig niggaz listen to what hypes tell them now and I never have to say a nigga name to get no action they gone come anyway cuz damn yu trippin WTF"*
- ***WILKINSON:*** *"They know I get my shit from u. How? Don't really matter tho cuz.  MF say they aint gotta come cuz I get it from u"*
- ***OFFICE:*** *"Cuz it's the same shit I got they do it that shut ain't hard to tell"*

23.     Based on my training, experience, and familiarity with this investigation, I believe that this series of messages reflect that Wilkinson was obtaining narcotics from OFFICE and that Wilkinson owed OFFICE money.

24.     On or about November 10, 2020, OFFICE and Wilkinson exchanged the following messages:

- **OFFICE:** *"Aye cuz I need yu I will give it rite bk tomorrow but the bank close and I'm tryin na grab these 3 pounds real quick I need a nickle I will have that shit bk to yu by the end of the day tomorrow fool"*
- **WILKINSON:** *"Got like 35 on me"*
- **OFFICE:** *"35 dollars nigga"*
- **WILKINSON:** *"Naw. Lol. 3500"*
- **OFFICE:** *"Naw nigga ion need no damn 3500 I need 500 mf"*
- **WILKINSON:** *"Damn. Okok. Thought u meanGs. Lol. Got u"*

25.     Based on my training, experience, and familiarity with this investigation, I believe that this series of messages reflect that OFFICE asked Wilkinson for $500 so he could purchase three pounds of suspected marijuana.

26.     Between November 16, 2020, and December 2, 2020, OFFICE and Wilkinson had several conversations pertaining to various houses. It should be noted that the investigation reflects that OFFICE and Wilkinson were working together to open drug houses on Milwaukee's south side.

- **WILKINSON:** *"Wyo? I just woke up"*

- **OFFICE:** *"Shit just riding wya", "Cuz we gotta do this shit while we can and the only reason I played it that way cuz I had a selfish moment cuz nbs I had jus came home I thought every mf was against me that shit wont happenagain I promise yu cuz if we get together we cant be stopped", "We don't jus have to have one crib cuz we can have 2 or 3 but a wise man kno he can't do it alone cuz I need yu"*
- **WILKINSON:** *"Fasho"*
- **WILKINSON:** *"Just making sure u good foo.  Need a MF HOUSE!!!"*
- **OFFICE:** *"Man cuz it's getting out of control we need to put our heads together and not stop until we get them mfz"*
- **WILKINSON:** *"4148400249, 2118/20 s 7th", "4143050108, 1625/23 s 7th"*

- *OFFICE: These ones yu already called or naw"*
- *WILKINSON: "4148284007, 1444 s 7th", "All three of them are private. I had somebody call but the more the better blood"*
- *OFFICE: "[His/Her] bitch ass owes me 3GS [he/she] always pay so I kno [he/she] on it so ima hit yu with that then I open up Thursday so yuk no yu got the rest comin ASAP I aint gone lie I'm so happy I got a crib nbs it's been rough", "I damn near wanted to hit the stash gotta have discipline doe"*
- *WILKINSON: "Hell Yeah. It'll always be another crib, nigga gotta maintain till he get it. U know to make ALL that shit count now"*
- *OFFICE: "Mos definitely yuk no how it go for nigga had jus got out it was party time it aint all bad doe but it aint all good either it always pay off doe", "I got that fool it came through [he/she] sent it straight to me account so we can go get it out tomorrow sometime"*
- *WILKINSON: "Ok"*

27.    Based on my training, experience, and familiarity with this investigation, I believe that OFFICE also referred to $3,000 being owed to him in the above-referenced messages. During this investigation, your affiant subsequently interviewed the individual who owed the $3,000 and he/she admitted to owing OFFICE that money for a heroin drug debt.

28.    Additionally, contained with **Target Cell Phone #1** are text messages between OFFICE and an individual using phone number (906) 282-3693, (the 3693 User), dated September 25, 2020. The 3693 User sent **Target Cell Phone #1** a message that stated: 6 of the gray 1 of the hard and if you wanna front me 4 ill pay ya 150 a rip for the 4."

29.    Based on my training, experience, and familiarity with this investigation, your affiant knows that "gray" is a street term for heroin, "hard" is a street term for crack cocaine, and "front" refers to giving drugs on loan. Further,

based on my training, experience, and familiarity with this investigation, your affiant believes that the 3693 User is a customer of OFFICE and requested six grams of heroin and one gram of crack cocaine from OFFICE. Following this message, OFFICE and the 3693 User discussed prices and OFFICE agreed to the sale. The 3693 User subsequently texted **Target Cell Phone #1**, "I'm Here." OFFICE, using **Target Cell Phone #1**, later texted, "now you owe me 1050." Therefore, based on these messages, your affiant believes that a narcotics transaction occurred.

30.     Contained with **Target Cell Phone #1** are text messages between OFFICE and a contact identified as "Kyriee." Specifically, on December 18, 2020, OFFICE sent "Kyriee" a message, stating: "Okay bet I got sticks if you need em…." "Kyriee" responded, stating: "Like 5/6" and "Who got switches I know I can find some." Based on my training, experience, and familiarity with this investigation, your affiant knows that "Sticks" is a common street term for firearms, and "switches" refers to a gun part used to make semi-automatic firearms fully automatic. In subsequent messages, OFFICE and "Kyriee" discussed prices for the firearms and switches. Based on my review of these messages, as well as my training and experience, I believe that OFFICE used **Target Cell Phone #1** to facilitate the illegal buying and selling of firearms.

31.     OFFICE is a convicted felon and therefore prohibited from possessing firearms. *See State of Wisconsin vs. Henry Office*, Milwaukee County Case Number 2014CF004903.

32.     **Target Cell Phone #1** also contained pictures of suspected heroin and suspected crack cocaine on scales, as well as pictures and videos of OFFICE with large sums of money.

33.     It should be noted that examples of conversations extracted from OFFICE's phone are only a few of many drug/ gun conversations between OFFICE and other users and/ or suspected co-conspirators.

## OFFICE used Target Cell Phone #1 to Sell Heroin to an Undercover Agent

34.     SA Dettmering learned of a potential confidential human source who purchases narcotics from Henry Office. SA Dettmering interviewed the potential source who confirmed he/ she purchases heroin from Henry Office.

35.     On or about April 27, 2020, case agents interviewed CS #4 regarding OFFICE. CS #4 indicated CS #4 contacts OFFICE at phone number (414) 242-0995, **Target Cell Phone #1**. CS #4 placed a recorded phone call to **Target Cell Phone #1**. OFFICE answered **Target Cell Phone #1** and agreed to sell heroin to CS #4 at a later date.

36.     Between May 3 and May 4, 2021, OFFICE used **Target Cell Phone #1** to text CS #4 for the purpose of arranging a meeting with CS #4, who unbeknownst to OFFICE was acting under the direction and control of case agents. The purpose of this meeting was for CS #4 to pay OFFICE for previously fronted narcotics and to introduce OFFICE to undercover police officers to conduct a controlled purchase of heroin.

37.     CS #4 has provided information since March, 2021.  CS #4's
information is consistent with case agent's knowledge of drug trafficking in
Milwaukee, Wisconsin.  Furthermore, substantial portions of CS #4's information
has been corroborated by controlled drug purchases, money deliveries, and
consensually recorded phone calls, as well as through independent investigation,
including surveillance and information from other sources.  CS #4 is cooperating
with law enforcement in exchange for monetary compensation.  CS #4 is not a
convicted felon, but has an open felony case for theft. For these reasons, case
agents believe CS #4 is reliable and credible.

38.     Based upon my training and experience, I know that a "controlled
buy" and/or controlled contact is a law enforcement operation in which a
confidential source purchases drugs from a target.  The operation is conducted
using surveillance, usually audio and video taping equipment, and pre-recorded
purchase money. When a confidential source is used, s/he is searched for
contraband, weapons, and money before the operation. The confidential source is
also wired with a concealed body recorder and monitoring device. When the
transaction is completed, the confidential source meets cases agents at a pre-
determined meet location and gives the purchased drugs and the
recording/monitoring equipment to the case agents. The confidential source is
again searched for contraband, weapons, and money.  A sample of the suspected
drugs is then field tested by case agents for the presence of controlled substance
and then placed in inventory pursuant to normal inventory procedures.  Telephone

calls to the target by the confidential source are consensually recorded calls under the direction and control of case agents and made in the presence of case agents.

39. CS #4 indicated that CS #4 knows OFFICE as "Reese," and that **Target Cell Phone #1** is saved under the contact labeled "Reese." On May 3, 2021, OFFICE and CS #4 planned to meet the following day, May 4, 2021. In this exchange, OFFICE sent a text message to CS #4, stating: "I got [fire emoji] you don't wanna miss this." Based on my training and experience, I know this message to mean that OFFICE told the CS #4 that he had really good heroin.

40. On May 4, 2021, CS #4 conducted a controlled drug evidence purchase with OFFICE for 35 grams of heroin. CS #4 travelled to a location in the City and County of Milwaukee to meet with OFFICE. OFFICE arrived at the meeting location in a Grey Nissan Altima bearing Illinois license plate FP61095.[1] CS #4 left the undercover vehicle and entered the Nissan with OFFICE for the purpose of purchasing 35 grams of heroin.

41. CS #4 returned with approximately 34.92 grams of a mixture and substance that field tested positive for heroin. CS #4 stated that OFFICE handed CS #4 the heroin. CS #4 further indicated that OFFICE was given the drugs by another individual who arrived during the controlled purchase.

---

[1] The vehicle being driven was registered to EAN Holdings LLC (Enterprise Rental Car) and was rented to Henry OFFICE, Date of Birth, XX/XX/1992, with a check out date of May 3, 2021, and a return date of May 18, 2021.

<u>CONCLUSION</u>

42.     As of August 3, 2021, **Target Cell Phone #1** is being serviced by Verizon Wireless.

43.     On or about July 16, 2021, case agents reviewed a pen register on **Target Cell Phone #1**. Based upon this review, since late April 2021, and continuing through mid-July 2021, **Target Cell Phone #1's** top callers have been very consistent, leading the affiant to believe that OFFICE remains in control and possession of **Target Cell Phone #1**.

44.     Additionally, on July 16, 2021, your affiant placed a call to **Target Cell Phone #1**, and OFFICE answered the phone.

45.     Case agents have probable cause to believe Henry OFFICE is using **Target Cell Phone #1** to conduct illegal narcotics trafficking activities in and around Milwaukee, Wisconsin.

46.     Case agents believe that obtaining location data for **Target Cell Phone #1** will assist case agents in further investigating OFFICE's drug-related activities, to include identifying locations in which he is traveling to further his drug acquisition and distribution.

47.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site

data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

<u>Cell-Site Data</u>

48.    Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

49.    Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time

tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## E-911 Phase II / GPS Location Data

50. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Subscriber Information

51.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

52.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

53.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

54.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

55.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is

reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

56.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number (414) 242-0995 (referred to herein and in Attachment B as "Target Cell Phone #1"), with an unknown listed subscriber(s) that is in the custody or control of Verizon Wireless, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2.      Target Cell Phone #1.

## ATTACHMENT B

### Particular Things to be Seized

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.    The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone #1 for the time period September 1, 2020, to the present:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

  ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone #1 for the time period September 1, 2020, to the present including:

    a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.  Information associated with each communication to and from the Target Cell Phone #1 for a period of 30 days from the date of this warrant, including:

  i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

  ii.  Source and destination telephone numbers;

  iii.  Date, time, and duration of communication; and

  iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which Target Cell Phone #1 will connect at the beginning and end of each communication

c.  Information about the location of Target Cell Phone #1 for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II

data, GPS data, latitude-longitude data, and other precise location information.

    i.    To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone #1 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii.    This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Section 841(a)(1) involving Henry OFFICE.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Verizon Wireless, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Verizon Wireless. The attached records consist of _____.

I further state that:

a.      All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon Wireless and they were made by Verizon Wireless as a regular practice; and

b.      Such records were generated by Verizon Wireless's electronic process or system that produces an accurate result, to wit:

1.      The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

2

2.      The process or system is regularly verified by Verizon Wireless and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____       _____
Date                                                    Signature